# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
09/30/2024
CT Log Number 547434685

## Service of Process Transmittal Summary

**TO:**    Robert Tadlock
Patagonia
259 W. SANTA CLARA STREET
VENTURA, CA 93001

**RE:**    **Process Served in California**

**FOR:**    Patagonia, Inc.  (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | HEATHER KNIGHT, individually and on behalf of all others similarly situated vs. PATAGONIA, INC. |
| **CASE #:** | 2024CUBT030800 |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 09/30/2024 at 13:24 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Robert Tadlock  legal.systems@patagonia.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 877-467-3525 |
| | SmallBusinessTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Exhibit A, Page 6

Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Mon, Sep 30, 2024
**Server Name:**                  DROP SERVICE

| | |
|---|---|
| Entity Served | PATAGONIA INC |
| Case Number | 2024CUBT030800 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED**
by Superior Court of California
County of Ventura
09/18/2024
Brenda L. McCormick
Executive Officer and Clerk
Hannah Cressy
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PATAGONIA, INC.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
HEATHER KNIGHT, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California
County of Ventura, 800 South Victoria Avenue, Ventura, CA 93009

CASE NUMBER:
*(Número del Caso):*
**2024CUBT030800**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
L. Timothy Fisher, Bursor & Fisher, P.A., 1990 N. California Blvd., 9th Floor, Walnut Creek, CA 94596, Tel.: (925) 300-4455

DATE:
*(Fecha)* 09/18/2024    Brenda L. McCormick

Clerk, by
*(Secretario)*

, Deputy
*(Adjunto)*
Hannah Cressy

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Patagonia, Inc.

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

 Print this form     Save this form    Exhibit A     Clear this form

Ventura Superior Court Accepted through eDelivery submitted 09-18-2024 at 03:29:00 PM

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF VENTURA**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. Many courts encourage or require parties to try ADR before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at *www.courtinfo.ca.gov/programs/adr/types.htm*. A form for agreeing to use ADR is attached.

### Potential Advantages and Disadvantages

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

### Most Common Types of ADR

**Mediation –** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences –** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration –** The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration,* they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration,* any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial, or want an expert in the subject matter of the dispute to make a decision.

### Local ADR Programs for Civil Cases

**Mediation –** The Ventura Superior Court has maintained a mediation program since April 1, 1993. Its goals are to speed resolution of cases by bringing the parties together before they have made a major economic and emotional investment in litigation, and to increase awareness of this effective method of alternative dispute resolution.

Mediators need not be attorneys, but must have 25 hours of formal mediation training by a recognized mediation training/education provider. Mediator duties include a brief review/preparation time and three hours of hearing time on a pro bono basis and pursuant to such rules as may be designated for mediators by the Ventura Superior Court.

Exhibit A, Page 9

**Party Pay Mediation Panel** – The court has a second mediation panel where mediators are paid by the parties rather than offering their services pro bono. Mediators on the "party pay" panel must have completed 25 hours of formal mediation training and have participated as mediator a minimum of 25 court assigned mediations with a minimum hearing time of two hours each from any California Superior Court.  All mediators on the "party pay" panel will provide three hours of mediation services per case at the rate of $150 per hour to be shared equally by all participating parties.

**Arbitration** – Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties.  The parties can agree to binding or nonbinding arbitration.  Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator.  If the arbitration is nonbinding, any party can reject the arbitrator's decision and request a trial.

**Mandatory Early Settlement Conference** – The MESC program was implemented through joint efforts of the Superior Court and the Ventura County Bar Association working primarily through the Bench/Bar Subcommittee.  Cases that are appropriate for the program are identified and referred to a settlement officer to conduct a settlement conference.  The parties have the opportunity for a serious exchange of facts, theories, and evaluations at the earliest possible time with an impartial attorney volunteer conducting the conference.  The basic difference between cases assigned to the MESC and Mediation programs is the nature of the case and the relief sought.  If the injury or damage is compensable in money damages and there is no emotional component or "hidden agenda" on the part of one or more of the parties, as is frequently the case in mediation cases, then the case is sent to the MESC program.  MESC may be appropriate when negotiations between the parties have not proven successful.

**Settlement Conference** – Settlement Conferences may be mandatory or voluntary.  In general, if the settlement conference is mandatory, ordered by the judge, the parties to the dispute and their attorneys will meet with a judge who conducts conference aimed at negotiating an agreement to settle the dispute rather than doing through the formal trial process.

**More Information about Court-Connected ADR:** Visit the court's webpage at www.ventura.courts.ca.gov.

**Dispute Resolution Programs Act (DRPA) funded ADR Program -** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code 465 et seq.):
- Ventura Center for Dispute Settlement, 4001 Mission Oaks Blvd., #L, Camarillo, CA 93012
  805-384-1313
- Ventura County District Attorney's Consumer Mediation Unit
  805-654-3110

**Private ADR** – To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice** – To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial.  ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process.  If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney.  Information about obtaining free and low cost legal assistance is also available on the California Courts Website at www.courtinfo.ca.gov/selfhelp/lowcost.

VN164

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | Telephone Number | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

☐ 800 SOUTH VICTORIA AVE. VENTURA, CA 93009

PLAINTIFF/PETITIONER

DEFENDANT/RESPONDENT

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** | CASE NUMBER: |
|---|---|

The parties and their attorneys stipulate that the claim(s) in this action shall proceed to the following alternative dispute resolution process:

☐ Private Mediation          ☐ Volunteer Mediation _____

☐ Mandatory Early Settlement Conference     ☐ Assignment to Private Judge

☐ Binding Arbitration            ☐ Non-Binding Arbitration

☐ Other (specify) : _____

It is further stipulated that the deadline for selection of a neutral and completion of the ADR process is: _____

_____

_____        _____
Plaintiff (print)                                 Defendant (print)

_____        _____
Signature of Plaintiff                            Signature of Defendant

_____        _____
Plaintiff's Attorney (print)                       Defendant's Attorney (print)

_____        _____
Attorney's Signature                             Attorney's Signature

Dated: _____          Dated: _____

**IT IS SO ORDERED.**

    IT IS FURTHER ORDERED THAT: _____

_____

_____

Dated: _____          _____
                                                 Judicial Officer

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS**

Exhibit A, Page 11

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF VENTURA**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. Many courts encourage or require parties to try ADR before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. You can read more information about these ADR processes and watch videos that demonstrate them at *www.courtinfo.ca.gov/programs/adr/types.htm*. A form for agreeing to use ADR is attached.

### Potential Advantages and Disadvantages

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

**Potential Advantages**
- Saves time
- Saves money
- Gives parties more control over the dispute resolution process and outcome
- Preserves or improves relationships

**Potential Disadvantages**
- May take more time and money if ADR does not resolve the dispute
- Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable

### Most Common Types of ADR

**Mediation –** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners.

**Settlement Conferences –** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration –** The parties present evidence and arguments to a neutral person called an "arbitrator" who then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration,* they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration,* any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial, or want an expert in the subject matter of the dispute to make a decision.

### Local ADR Programs for Civil Cases

**Mediation –** The Ventura Superior Court has maintained a mediation program since April 1, 1993. Its goals are to speed resolution of cases by bringing the parties together before they have made a major economic and emotional investment in litigation, and to increase awareness of this effective method of alternative dispute resolution.

Mediators need not be attorneys, but must have 25 hours of formal mediation training by a recognized mediation training/education provider. Mediator duties include a brief review/preparation time and three hours of hearing time on a pro bono basis and pursuant to such rules as may be designated for mediators by the Ventura Superior Court.

Exhibit A, Page 12

Party Pay Mediation Panel – The court has a second mediation panel where mediators are paid by the parties rather than offering their services pro bono. Mediators on the "party pay" panel must have completed 25 hours of formal mediation training and have participated as mediator a minimum of 25 court assigned mediations with a minimum hearing time of two hours each from any California Superior Court.  All mediators on the "party pay" panel will provide three hours of mediation services per case at the rate of $150 per hour to be shared equally by all participating parties.

**Arbitration** – Arbitration is normally an informal process in which a neutral person (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties.  The parties can agree to binding or nonbinding arbitration.  Binding arbitration is designed to give each side a resolution of their dispute when they cannot agree between themselves or with a mediator.  If the arbitration is nonbinding, any party can reject the arbitrator's decision and request a trial.

**Mandatory Early Settlement Conference** – The MESC program was implemented through joint efforts of the Superior Court and the Ventura County Bar Association working primarily through the Bench/Bar Subcommittee.  Cases that are appropriate for the program are identified and referred to a settlement officer to conduct a settlement conference.  The parties have the opportunity for a serious exchange of facts, theories, and evaluations at the earliest possible time with an impartial attorney volunteer conducting the conference.  The basic difference between cases assigned to the MESC and Mediation programs is the nature of the case and the relief sought.  If the injury or damage is compensable in money damages and there is no emotional component or "hidden agenda" on the part of one or more of the parties, as is frequently the case in mediation cases, then the case is sent to the MESC program.  MESC may be appropriate when negotiations between the parties have not proven successful.

**Settlement Conference** – Settlement Conferences may be mandatory or voluntary.  In general, if the settlement conference is mandatory, ordered by the judge, the parties to the dispute and their attorneys will meet with a judge who conducts conference aimed at negotiating an agreement to settle the dispute rather than doing through the formal trial process.

**More Information about Court-Connected ADR:** Visit the court's webpage at www.ventura.courts.ca.gov.

**Dispute Resolution Programs Act (DRPA) funded ADR Program -** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code 465 et seq.):
- Ventura Center for Dispute Settlement, 4001 Mission Oaks Blvd., #L, Camarillo, CA 93012
  805-384-1313
- Ventura County District Attorney's Consumer Mediation Unit
  805-654-3110

**Private ADR** – To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

**Legal Representation and Advice** – To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial.  ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process.  If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney.  Information about obtaining free and low cost legal assistance is also available on the California Courts Website at www.courtinfo.ca.gov/selfhelp/lowcost.

VN164

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | Telephone Number | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR (Name): | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

☐ 800 SOUTH VICTORIA AVE. VENTURA, CA 93009

PLAINTIFF/PETITIONER

DEFENDANT/RESPONDENT

| **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS** | CASE NUMBER: |
|---|---|

The parties and their attorneys stipulate that the claim(s) in this action shall proceed to the following alternative dispute resolution process:

☐ Private Mediation                    ☐ Volunteer Mediation _____

☐ Mandatory Early Settlement Conference    ☐ Assignment to Private Judge

☐ Binding Arbitration                  ☐ Non-Binding Arbitration

☐ Other (specify) : _____

It is further stipulated that the deadline for selection of a neutral and completion of the ADR process is: _____

_____

_____

| _____ | _____ |
|---|---|
| Plaintiff (print) | Defendant (print) |
| _____ | _____ |
| Signature of Plaintiff | Signature of Defendant |
| _____ | _____ |
| Plaintiff's Attorney (print) | Defendant's Attorney (print) |
| _____ | _____ |
| Attorney's Signature | Attorney's Signature |
| Dated: _____ | Dated: _____ |

**IT IS SO ORDERED.**

IT IS FURTHER ORDERED THAT: _____

_____

_____

Dated: _____        _____
                                              Judicial Officer

Optional Form
VN164 (01/02)

**STIPULATION TO USE OF ALTERNATIVE DISPUTE
RESOLUTION PROCESS**

Exhibit A, Page 14

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF VENTURA**
800 South Victoria Avenue
Ventura, CA 93009
(805) 289-8525
www.ventura.courts.ca.gov

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Your case has been assigned for all purposes to the judicial officer indicated below.

A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| Case Number: 2024CUBT030800 | Location: Hall of Justice |
|---|---|
| Assigned Judicial Officer: Ben Coats | Department: 43 |

| Hearing: MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default |||
|---|---|---|
| Event Date: 03/12/2025 | Event Time: 8:35 AM | Event Department: 43 |

### Scheduling Information

**Judicial Scheduling Information:** The above hearing is MANDATORY. Each party is ordered to file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725) and you may be sanctioned for noncompliance with a court order (CCP 177.5). If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).

**Advanced Jury Fee Requirement:** At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters:** To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance:** Telephonic Appearance at the Mandatory Appearance Case Management Conference is permitted pursuant to CRC 3.722(c) through CourtCall, the court's teleconference provider. (See also CRC 3.672). To schedule a CourtCall appearance, a party must pre-register with CourtCall at https://courtcall.com/support/faq/registration or call 888-882-6878.

Clerk of the Court,

Hannah Cressy

Date: 09/24/2024

**NOTICE OF CASE ASSIGNMENT**

Exhibit A, Page 15

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| L. Timothy Fisher, (State Bar No. 191626)<br>Bursor & Fisher, P.A.1990 N. California Blvd., 9th Floor, Walnut Creek CA 94596 | **Electronically FILED** by Superior Court of California County of Ventura 09/18/2024 Brenda L. McCormick Executive Officer and Clerk Hannah Cress Deputy Clerk |

TELEPHONE NO.: (925) 300-4455     FAX NO.: (925) 407-2700
EMAIL ADDRESS: ltfisher@bursor.com
ATTORNEY FOR *(Name):* Plaintiff Heather Knight

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura - Hall of Justice

CASE NAME:
Heather Knight v. Patagonia, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $35,000) ☐ Limited (Amount demanded is $35,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **2024CUBT030800** |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☒ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☒ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☒ Substantial amount of documentary evidence
   d. ☒ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* One
5. This case ☒ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: September 18, 2024
L. Timothy Fisher
_____
(TYPE OR PRINT NAME)        ▶ L. Timothy Fisher (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Ventura Superior Court Accepted through eDelivery submitted 09-18-2024 at 03:29:00 PM

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form]  [Save this form]

Exhibit A - Page 17   [Clear this form]

VENTURA SUPERIOR COURT
09/18/24

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*



SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF VENTURA

HEATHER KNIGHT, individually and on
behalf of all others similarly situated,

                              Plaintiff,

        v.

PATAGONIA, INC.,

                              Defendant.

Case No.   **2024CUBT030800**

**CLASS ACTION COMPLAINT**

1. **Violation of the Arizona Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 *et seq.***

**Jury Trial Demanded**

Ventura Superior Court Accepted through eDelivery submitted 09-18-2024 at 03:29:00 PM

CASE #2024CUBT030800 RECEIPT #: 1240924D219112 DATE PAID : 09/24/24 10:41 AM TOTAL : 1,435.00 TYPE : EFT

1           Plaintiff Heather Knight, individually and on behalf of all others similarly situated, as set

2    forth herein, alleges as follows:

3    **NATURE OF THE ACTION**

4        1.     This is a class action on behalf of persons in the State of Arizona that opened emails

5    sent to them by Patagonia, Inc. ("Defendant" or "Patagonia") due to Defendant's violations of

6    Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 *et seq.*

7        2.     Defendant is one of the nation's premier retailers of outdoor recreation clothing. To

8    entice consumers to purchase their products and maximize sales, Defendant disseminates

9    marketing emails and uses spy pixels to track its recipients' reading habits. Defendant exploits this

10   data to build customer profiles so it can sell and market more products to them. Its recipients may

11   be aware that they receive marketing emails, but they are not aware of, nor do they consent to,

12   Defendant's surreptitious means of tracking their sensitive reading behavior.

13       3.     Plaintiff and Class members receive marketing emails from Defendant.

14       4.     Defendant embeds hidden spy pixel trackers within its emails. These trackers

15   capture and log sensitive information including the time and place subscribers open and read their

16   messages, how long it takes the subscriber to read the email, subscribers' location, subscribers'

17   email client type, subscribers' IP address, subscribers' device information and whether and to

18   whom the email was forwarded to. Defendant never received subscribers' consent to collect this

19   private information.

20       5.     Defendant's invasive surveillance of Plaintiff's sensitive reading habits and

21   clandestine collection of her confidential email records invaded her privacy and intruded upon her

22   seclusion.

23       6.     By failing to receive consent from Plaintiff and Class members, Defendant is

24   violating Arizona's Telephone, Utility and Communication Service Records Act, a statute that

25   prohibits procuring or attempting to procure the communication service records of email recipients

26   without their authorization.

27

28

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL       2

**PARTIES**

7.     Plaintiff is a resident of Arizona, residing in Tuscon, Arizona.  Within the past two years, Plaintiff has received promotional emails from Defendant.  From approximately 2014, Plaintiff frequently opened emails from Defendant to review promotional materials.  Plaintiff most recently opened one of Defendant's emails in March 2024.

8.     Each time Plaintiff opened an email from Defendant, Defendant procured her sensitive email information including the time and place she opened and read the messages, how long she read the email, her location, her email client type, her IP address, her device information and whether and to whom the email was forwarded to.

9.     Defendant never received consent from Plaintiff to procure her private email records.

10.     Defendant Patagonia, Inc. is a California corporation with its principal place of business in Ventura, California.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over all causes of action alleged in the Complaint pursuant to the California Constitution, Article VI, §10, and is a Court of competent jurisdiction to grant the relief requested.  Plaintiff's claims alleged in this Complaint are not preempted by federal law, do not challenge conduct within any federal agency's exclusive domain, and are not statutorily assigned to any other trial court.

12.     This Court has personal jurisdiction over Patagonia, Inc. because Defendant is headquartered in this County and Plaintiff's claims arise from that business.  The connection between Plaintiff's claims and Defendant's California business operations renders the exercise of jurisdiction by this Court over Defendant appropriate under traditional notions of fair play and substantial justice.

13.     Venue is proper in this Court pursuant to Code of Civil Procedure §§395 and 395.5. Defendant resides in the City and County of Ventura, Defendant regularly conducts business in the

1    City and County of Ventura, and a substantial portion of the events giving rise to the claims alleged

2    herein occurred in the City and County of Ventura.

3                              **FACTUAL ALLEGATIONS**

4    **A.    The HP Spying Scandal and A.R.S. § 44-1376**

5         14.    In 2001, Hewlett-Packard "embark[ed] on one of the largest and most difficult

6    mergers in American business history."[1]  Spearheaded by then-CEO Carly Fiorina, HP sought to

7    acquire a rival company, Compaq, Inc., in a deal valued at $25 billion.[2]

8         15.    "Widely considered one of the worst tech mergers in history,"[3] the economic fallout

9    from the acquisition began immediately.[4]  By 2004, "Hewlett-Packard's stock had dropped below

10   seventeen dollars, from a high of more than sixty dollars, in 2000."[5]  Industry insiders took note,

11   with a "consensus" believing that "the new HP, the tech industry's most sprawling conglomerate,

12   ha[d] lost its focus and [was] being squeezed between two formidable rivals with much clearer

13   business models, Dell and IBM."[6]

14        16.    In January 2005, a few days before HP's annual retreat, two board members,

15   Patricia Dunn and George Keyworth, met with Fiorina to discuss their concerns about the

16   company's direction.[7]  Fiorina sought to placate Dunn and Keyworth, "agree[ing] to tear up her

17

18   _____

19   [1] Michael Malone, *The H-P-Compaq Mess Isn't All Carly's Doing*, WALL. ST. J. (May 21, 2002), https://www.wsj.com/articles/SB1021933260918245440.

20   [2] Andrew Ross Sorkin, *Hewlett-Packard in Deal to Buy Compaq for $25 Billion in Stock*, N.Y. TIMES (Sept. 4, 2001), https://www.nytimes.com/2001/09/04/business/hewlett-packard-in-deal-to-
21   buy-compaq-for-25-billion-in-stock.html.

22   [3] PCMag Staff, *The Biggest Tech Mergers and Acquisitions of All Time*, PCMAG (Apr. 12, 2021), https://www.pcmag.com/news/the-biggest-tech-mergers-and-acquisitions-of-all-time.

23   [4] Mike Musgrove, *HP Posts $2 Billion Loss in First Full Quarter with Compaq*, WASH. POST (Aug. 28, 2002), https://www.washingtonpost.com/archive/business/2002/08/28/hp-posts-2-billion-loss-
24   in-first-full-quarter-with-compaq/2486859a-b55c-4247-9f0a-cb1d839b68d8/.

25   [5] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

26   [6] The Economist Staff, *Losing the HP way*, THE ECONOMIST (Aug. 19, 2004), https://www.economist.com/business/2004/08/19/losing-the-hp-way.

27   [7] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

28

agenda for the board's strategy retreat ... and focus instead on the directors' concerns."[8]  But shortly after the retreat, "a reporter for the *Wall Street Journal*, Pui-Wing Tam, called to confirm details that Tam had learned about the retreat, including assertions that Fiorina had lost the confidence of the board and that operating responsibilities would soon be shifted away from her."[9]  "Clearly, someone at the retreat, which was attended only by board members and top executives, had leaked proprietary information."[10]

17.    Fiorina responded with fury.  After "call[ing] the board members together on the phone," Fiorina "dressed them down for giving details of the meeting."[11]  But that response only further inflamed tensions between Fiorina and the board, and less than two weeks after the retreat, the board met again, this time without Fiorina, and voted to dismiss her.[12]

18.    Despite Fiorina's departure, board members remained perturbed by the disclosures to the press, and so when elevating Patricia Dunn to nonexecutive chairwoman and tasking her with choosing Fiorina's successor, the board also provided Dunn with another mandate: "stop the board leaks."[13]

19.    Dunn promptly initiated an investigation, code-naming it "Project Kona."[14]  But before Project Kona could get off the ground, another more damaging leak came to light.[15]  In the months after Fiorina's removal, Dunn selected Mike Hurd, a CEO at a competitor company, to serve as HP's new CEO.[16]

---

[8] Alan Murray, H-P Board Clash Over Leaks Triggers Angry Resignation, WALL ST. J. (Sept. 6, 2006), https://www.wsj.com/articles/SB115749453036454340.

[9] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

[10] *Id.*

[11] Alan Murray, H-P Board Clash Over Leaks Triggers Angry Resignation, WALL ST. J. (Sept. 6, 2006), https://www.wsj.com/articles/SB115749453036454340.

[12] *Id.*

[13] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

[14] *Id.*

[15] *Id.*

[16] *Id.*

20.    However, before the board could make an announcement, a reporter from *Business Week* reached out, asking for comment on Hurd's selection.[17]  Because Hurd had not yet left the other company, revealing his candidacy before he resigned could potentially derail the process.[18]

21.    Although Hurd would go on to become HP's CEO without issue, the new disclosure added urgency to determining who was behind the leaks.[19]  For Dunn, Project Kona was the way to find out.[20]

22.    To staff Project Kona, Dunn turned to a security manager at HP, Kevin Huska, who, in turn, "referred Dunn to an outside investigator named Ronald R. DeLia, whose firm, Security Outsourcing Solutions, based in Boston, had been under contract to Hewlett-Packard for some ten years."[21]  Throughout the summer of 2005, Dunn received regular updates from DeLia, including one call where he "revealed that his investigators had obtained private phone records of reporters."[22]

23.    DeLia received these records through "pretexting," which, in his own words, "involved investigators requesting information from [telephone] operators orally, over the phone, pretending to be someone else if necessary."[23] Notwithstanding this invasion of privacy, Project Kona failed to pinpoint a leaker, and as the year winded down, so too did the investigation.[24]

24.    Then, in January 2006,  a reporter from CNET named Dawn Kawamoto published an "inside account of the company's retreat, held two weeks earlier."[25]  The substance of the article was innocuous, but at HP, "the story was met with alarm."[26]  In response to the leak, "[a] new

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

1    investigation was immediately launched, which Dunn called Kona II."[27]  HP's general counsel,

2    Ann Baskins, "asked an employment lawyer at the company, Kevin Hunsaker, to head the renewed

3    investigation."[28]  "With Hunsaker in day-to-day charge, the investigators undertook their mission

4    with extraordinary zeal," pretexting phone companies to obtain records for reporters, directors, and

5    employees.[29]

6          25.     In addition to pretexting, the investigators also took a new approach.[30]  Posing as a

7    disgruntled employee, they emailed Kawamoto with the promise of revealing damaging

8    information about the company.[31]  Unbeknownst to Kawamoto, the investigators utilized

9    "ReadNotify," a tracker that, once embedded into an email, allowed them to "track the path [the]

10    message takes, including whether [the] recipient opens the message."[32]

11          26.     "[A] technique also employed by some e-mail marketers,"[33] the investigators hoped

12    that Kawamoto would "forward the e-mail to her source," thereby revealing who had leaked the

13    confidential information.[34]

14          27.     ReadNotify failed to yield results, with Kawamoto declining to forward the email.[35]

15    But this time around, after combing through the phone records, investigators discovered that a

16    board member, George Keyworth, had a short conversation with Kawamoto right before the article

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] Robert McMillan, *HP's e-mail tracer in widespread use*, COMPUTERWORLD (Oct. 10, 2006), https://www.computerworld.com/article/2820287/hp-s-e-mail-tracer-in-widespread-use.html

[33] *Id.*

[34] Joris Evers, *How HP bugged e-mail*, CNET (Sept. 29, 2006), https://www.cnet.com/news/privacy/how-hp-bugged-e-mail/.

[35] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

---

1    was published.[36]  After the revelation, the board confronted Keyworth, who admitted to having

2    lunch with the reporter and "say[ing] some nice things about Mike Hurd."[37]

3        28.    The board responded by voting on a motion to request Keyworth's resignation.[38]

4    After the motion passed, a board member who dissented, Mark Perkins, quit in protest.[39]

5    Keyworth, for his part, refused to step aside, "saying the shareholders had elected him, and he felt

6    the punishment was out of proportion to the offense."[40]

7        29.    Perkins did not go quietly.[41]  After resigning from the board, Perkins retained a

8    lawyer, Viet Denh, who "contacted the S.E.C., the U.S. Attorney's offices in Manhattan and San

9    Francisco, the California Attorney General, the F.C.C., and the F.T.C."[42]

10       30.    Once HP's tactics were made public, the reaction was swift and overwhelming.  In

11   September 2006, Congress held a hearing on the scandal, asking Dunn and other witnesses to

12   answer two questions: "Exactly what did they know about the use of pretexting," and "[w]hat did

13   they know about planting spyware on an email to a journalist."[43]

14       31.    The witnesses verified that investigators employed both methods to gather evidence,

15   but they maintained that their conduct was lawful.[44]  Throughout the hearing, members of Congress

16   called for a law that would prohibit these practices, with one member remarking that "[t]he

17   growing market for personal information is enormous, and many of us have seen this, and that is

18   why we need to pass legislation to stop this."[45]  When another member asked Dunn whether it

19   _____

20   [36] *Id.*

     [37] *Id.*

21   [38] *Id.*

22   [39] *Id.*

23   [40] *Id.*

     [41] *Id.*

24   [42] *Id.*

25   [43] Hewlett-Packard's Pretexting Scandal: Hearing Before the Subcomm. on Oversight and
     Investigations of the H. Comm. on Energy and Commerce, 109th Cong. 45 (2006),
26   https://www.govinfo.gov/content/pkg/CHRG-109hhrg31472/html/CHRG-109hhrg31472.htm.

27   [44] *Id.*

     [45] *Id.*

28

_____

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL                                    8

"strike[s] you as a permissible tactic to use, attaching a tracking device onto an e-mail," Dunn replied, "[i]t is kind of surprising that it is legal, isn't it?"[46] Still another member lamented that email trackers were "equivalent to going through the mail in my mailbox."[47]

32.     Six days after the hearing, the California Attorney General indicted Dunn, Hunsaker, DeLia, and two private investigators involved in both iterations of Project Kona.[48] A few months after that, Congress passed the Telephone Records and Privacy Protection Act of 2006, a law that criminalizes "knowingly and intentionally obtain[ing], or attempt[ing] to obtain, confidential phone records information of a covered entity, by making false or fraudulent statements or representations to an employee of a covered entity." 18 U.S.C. § 1039(a)(1). That law, as the text suggests, only prohibits pretexting, not the use of email trackers.

33.     After Congress enacted the Telephone Records and Privacy Protection Act of 2006, the Arizona legislature went a step further, passing a law that addressed *both* methods used by HP's investigators. Like the federal law, this new Arizona law prohibits any person from procuring or conspiring with another to procure "a telephone record" of residents without consent. But, in addition, the new law also prohibits procurement of any "communication service record" (including email records) of "any resident of this state without the authorization of the customer to whom the record pertains, or by fraudulent, deceptive, or false means." Ariz. Rev. Stat. Ann. § 44-1376.01. And while Congress declined to include a private right of action in the federal law, the Arizona legislature allowed residents to pursue civil remedies. Ariz. Rev. Stat. Ann. § 44-1376.04(2).

**B.     Email Pixels**

34.     Despite Arizona law prohibiting the practice, companies still embed trackers within emails without first obtaining consumers' consent. Indeed, "[a] 2018 Princeton study on email

---

[46] *Id.*

[47] *Id.*

[48] James Stewart, *The Kona Files*, THE NEW YORKER (Feb. 11, 2007), https://www.newyorker.com/magazine/2007/02/19/the-kona-files.

1    tracking tested over 12,000 emails from 900 senders offering mailing list subscriptions and found

2    that 70% contained trackers."[49]

3          35.      These trackers, known as "spy pixels," enable companies to learn information about

4    the email transmission, including when and where the email was opened. Pixels are used to log

5    when the recipient accesses the email and can record the number of times an email is opened, the

6    IP address linked to a user's location, and device usage.[50]

7          36.      Spy pixels can also monitor how long the recipient spends reading the email,

8    whether the email was forwarded, and whether the recipient prints the email.[51]

9          37.      The use of spy pixels is a "grotesque invasion of privacy" according to industry

10    advocates.[52]

11          38.      To activate a spy pixel, recipients only need to open the email. The recipient does

12    not need to directly engage with the pixel—when an email is opened the tracking pixel is

13    automatically downloaded.[53]

14          39.      A spy pixel is typically a 1x1 (one pixel high by one pixel long) image. "The spy

15    pixel is so small it is basically impossible to see with the naked eye."[54]

16          40.      The spy pixel used by marketers today operates the same way as the spy pixels in

17    the HP pretexting scandal—email activity including who accessed an email, as well as when and

18

---

19    [49] Mikael Berner, *The Business of Email Tracking: What To Know About Spy Pixels In Your Inbox*,
20    FORBES (Jun 9, 2022), https://www.forbes.com/sites/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know-about-spy-pixels-in-your-inbox/?sh=2084ee793fec.

21    [50] Charlie Osborne, *Tracker pixels in emails are now an 'endemic' privacy concern*, ZDNET (Feb.
22    17, 2021), https://www.zdnet.com/article/spy-pixels-in-emails-to-track-recipient-activity-are-now-an-endemic-privacy-concern/.

23    [51] https://knowledge.validity.com/s/articles/Everest-Engagement-Playbook-Beginner?language=en_US

24    [52] *Charlie Osborne, Tracker pixels in emails are now an 'endemic' privacy concern, ZDNET (Feb.
25    17, 2021), https://www.zdnet.com/article/spy-pixels-in-emails-to-track-recipient-activity-are-now-an-endemic-privacy-concern/.*

26    [53] *Id.*

27    [54] Becky Willeke, *Spy pixels are hiding in your emails; so what can you do about it?*, FOX 2 NOW
(Mar. 15, 2021), https://fox2now.com/news/tech-talk/spy-pixels-are-hiding-in-your-emails-so-what-can-you-do-about-it/.

28

---

1    where an email was accessed, is procured through the same technology, an invisible pixel

2    embedded in the email code that allows the sender to log and track that information.

      C.    **Defendant's Spy Pixel Tracking**

3

4    41.    Defendant uses its own spy pixel to track when customers open their emails, as

5    pictured in the example below.   That tracker records the email address, the subject of the email,

6    when the email is opened and read, the recipient's location, how long the recipient spends reading

7    an email, whether it is forwarded, whether it is printed, and what kind of email server the recipient

8    uses, among other sensitive information:

9

10

11    

12

13

14

15

16

17    42.    Defendant embedded spy tracking pixels in marketing emails Defendant sent to

18    Plaintiff and Class Members to collect the above-listed sensitive information, unbeknownst to

19    email recipients.

20    43.    Plaintiff was unaware that tracking pixels were embedded in the emails as

21    Defendant does not inform users it embeds tracking pixels in its marketing emails.  Defendant

22    never received consent from Plaintiff and Class Members to use these spy pixels.

      **CLASS ACTION ALLEGATIONS**

23

24    44.    Plaintiff seeks to represent a class (the "Class") defined as: All persons within

25    Arizona who have opened a marketing email containing a tracking pixel from Defendant.

26

27

28

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL       11

1    45.    Excluded from the Class is Defendant, its subsidiaries, affiliates, officers, directors,

2    assigns and successors, and any entity in which it has a controlling interest, and the Judge to whom

3    this case is assigned and any member of his or her immediate family.

4    46.    Members of the Class are so numerous that their individual joinder herein is

5    impracticable.  On information and belief, members of the Class number in the hundreds of

6    thousands.  The precise number of Class members and their identities are unknown to Plaintiff at

7    this time but will be determined through discovery.  Class members may be notified of the

8    pendency of this action by mail and/or publication through the distribution records of Defendant

9    and third-party retailers and vendors.

10    47.    Common questions of law and fact exist as to all Class members and predominate

11    over questions affecting only individual Class members.  Common legal and factual questions

12    include, but are not limited to:

13        a.    whether Defendant "[k]nowingly procure[d], attempt[ed] to procure,
14              solicit[ed] or conspire[d] with another to procure a … communication
          service record of any resident of this state without the authorization of the
15              customer to whom the record pertains or by fraudulent, deceptive or false
          means" in violation of A.R.S. § 44-1376 *et seq.*;

16        b.    whether Plaintiff's and the Class's "communication service records" were
17              procured, sold or received in violation of A.R.S. § 44-1376, *et seq.*

18        c.    whether Defendant's conduct violates A.R.S. § 44-1376, *et seq.* or any other
          applicable laws; and
19

20        d.    whether, as a result of Defendant's misconduct as alleged herein, Plaintiff
          and Class members are entitled to restitution, injunctive, and/or monetary
21              relief and, if so, the amount and nature of such relief.

22    48.    Plaintiff's claims are typical of the claims of Class members because Plaintiff, like

23    all Class members, had her communication service records procured, sold, or received by

24    Defendant.

25    49.    Plaintiff is an adequate representative of the Class because her interests do not

26    conflict with the interests of the Class members she seeks to represent, she has retained counsel

27    competent and experienced in prosecuting class actions, and she intends to prosecute this action

28

1    vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and

2    her counsel.

3        50.    The class mechanism is superior to other available means for the fair and efficient

4    adjudication of the claims of Plaintiff and Class members. Each individual Class member may lack

5    the resources to undergo the burden and expense of individual prosecution of the complex and

6    extensive litigation necessary to establish Defendant's liability. Individualized litigation increases

7    the delay and expense to all parties and multiplies the burden on the judicial system presented by

8    the complex legal and factual issues of this case. Individualized litigation also presents a potential

9    for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer

10   management difficulties and provides the benefits of single adjudication, economy of scale, and

11   comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment

12   of the liability issues will ensure that all claims and claimants are before this Court for consistent

13   adjudication of the liability issues.

14       51.    Plaintiff reserves her rights under Rule of Court 3.765 to amend or modify the Class

15   description with greater specificity, or to further divide the Class into additional subclasses.

16                        **FIRST CLAIM FOR RELIEF**
17                     **Violation of A.R.S. § 44-1376.01**

18       52.    Plaintiff hereby incorporates by reference the allegations contained in all preceding

19   paragraphs of this complaint.

20       53.    Plaintiff brings this claim individually and on behalf of the members of the

21   proposed Class against Defendant.

22       54.    Defendant embeds spy pixels in its marketing emails sent to Plaintiff and Class

23   members.

24       55.    The spy pixels are designed to extract "communication service records" related to

25   the delivery of the email in which the spy pixel is embedded. This includes, but is not limited to,

26   time logs of email access, logs of associated email addresses, logs of email client type, logs of

27

28

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL                                    13

Exhibit A, Page 30

1  email path data, logs of recipient location, logs of IP address, logs of email forwarding data, and

2  logs of device information.

3       56.    Defendant "procures" Plaintiff's and Class members' "communication service

4  records" because they "obtain by any means, including electronically" Plaintiff and Class

5  member's "communication service records" as defined in A.R.S. § 44-1376.

6       57.    In contravention of A.R.S. § 44-1376.01, Defendant knowingly procures "subscriber

7  information, including name, billing or installation address, length of service, payment method,

8  telephone number, electronic account identification and associated screen names, toll bills or

9  access logs, records of the path of an electronic communication between the point of origin and the

10  point of delivery and the nature of the communication service provided, such as … electronic mail

11  …," which constitute "communication service records" under A.R.S. § 44-1376, from Plaintiff and

12  Class members.

13       58.    Plaintiff and Class members were never informed by Defendant, and thus never

14  knew, that Defendant would be procuring sensitive information including, but not limited to, time

15  logs of email access, associated email addresses, email client type, email path data, IP addresses,

16  and device information.

17       59.    Plaintiff and Class members never gave lawful consent to Defendant to procure the

18  communication service records.

19       60.    Each time Defendant sent an email containing a spy pixel, Defendant procured a

20  communication service record, thus committing a separate violation of A.R.S. § 44-1376.01.

21       61.    Defendant invaded Plaintiff's and Class members' right to privacy by its invasive

22  surveillance of Plaintiff's and Class members' sensitive reading habits, including when they

23  opened and read an email.  This clandestine collection of their confidential email records also

24  intruded upon their seclusion.

25       62.    Accordingly, Plaintiff, individually and on behalf of the proposed Class, prays for

26  the relief set forth by the statute, including actual damages, profits made by Defendant as a result

27

28

---

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL                                              14

1    of the violation, $1,000 for each violation, reasonable attorneys' fees and other litigation costs

2    reasonably incurred, and such other equitable relief as the court determines to be appropriate.

3                            **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for relief as follows:

5    A.    An Order determining that this action may proceed as a class action and certifying
6          the proposed Class and/or any other appropriate subclasses pursuant to Code of
           Civil Procedure §382;
7
     B.    An Order designating Plaintiff as the Class Representative;
8
     C.    An Order designating Plaintiff's counsel as Class Counsel;
9
10   D.     For an order declaring that Defendant's conduct, as set out above, violates A.R.S. §
           44-1376.01;
11
     E.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;
12
     F.    For actual damages or damages of $1,000.00 for each of Defendant's violations,
13         whichever is more, pursuant to A.R.S. § 44-1376.04, which exceeds $300,000 in
           aggregate;
14
15   G.    For damages equal to the sum of any profits Defendant made for each of
           Defendant's violations, pursuant to A.R.S. § 44-1376.04;
16
     H.    For injunctive and other equitable relief as is necessary to protect the interests of the
17         Class, including, inter alia, an order requiring Defendant to comply with A.R.S. §
           44-1376, et seq.
18
19   I.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and
           expenses and costs of suit;
20
     J.    For pre- and post-judgment interest on all amounts awarded, to the extent allowable;
21         and
22   K.    All such other and further relief as this Court may deem just and proper.

23                            **JURY DEMAND**

24        Plaintiff hereby demands trial by jury for all causes of action, claims or issues in this action

25   that are triable as a matter of right to a jury.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 18, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL                    16