SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON (Cal. Bar No. 168646)
ccardon@sheppardmullin.com
BENJAMIN O. AIGBOBOH (Cal. Bar No. 268531)
baigboboh@sheppardmullin.com
PATRICK D. RUBALCAVA (Cal. Bar No. 335940)
prubalcava@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701

*Attorneys for Defendant*
PATAGONIA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER KNIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATAGONIA, INC.,<br><br>Defendant. | Case No.: 2:24-cv-09349-MCS-AGR<br><br>*Assigned to the Hon. Mark C. Scarsi*<br><br>**DEFENDANT PATAGONIA, INC.'S:**<br><br>**(1) NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); AND**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>[*Declaration of Patrick D. Rubalcava, Request for Judicial Notice, and [Proposed] Order submitted concurrently herewith*]<br><br>**Hearing:**<br>Date:        February 3, 2025<br>Time:        9:00 a.m.<br>Courtroom:   7C<br><br>Complaint Filed:  Sept. 18, 2024<br>Trial Date:       None set |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Mark C. Scarsi, in Courtroom 7C, of the United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Defendant Patagonia, Inc. ("Patagonia") will and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff Heather Knight's Class Action Complaint ("Complaint").

Patagonia's Motion to Dismiss Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") is made on the grounds that Complaint fails to state a claim for relief for violation of the Arizona Telephone Utility and Communication Service Records Act, Arizona Revised Statutes § 44-1376 *et seq*.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 31, 2024.

Patagonia's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Patrick D. Rubalcava and Request for Judicial Notice submitted concurrently herewith, all pleadings and papers on file in this case, and such additional authority and argument as it may present at or before the time this Motion is submitted.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated:  November 26, 2024    By    */s/ P. Craig Cardon*
P. CRAIG CARDON
BENJAMIN O. AIGBOBOH
PATRICK RUBALCAVA

*Attorneys for Defendant*
PATAGONIA, INC.

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION .................................................................................... 1

II. RELEVANT ALLEGATIONS ................................................................ 2

III. LEGAL STANDARD ............................................................................. 2

IV. THE MOTION SHOULD BE GRANTED ............................................. 3

    A. Dismissal Is Proper Because The Arizona Records Act Does Not Apply To Parties to A Communication ..................................... 3

    B. Even If Patagonia Procured The Email-Related Information From A Communication Service Provider, Dismissal Would Still Be Proper Because The Information Is Not A "Communication Service Record" ................................................................................ 8

    C. The Complaint Should Be Dismissed Because Plaintiff Lacks Statutory Standing ........................................................................... 9

        1. Plaintiff Lacks Statutory Standing Because The Complaint Does Not Allege That Plaintiff Is A "Customer" Under The Act ............................................................................... 9

        2. Plaintiff Lacks Statutory Standing Because The Complaint Does Not Allege Plaintiff Suffered Actual Damages .................. 10

V. CONCLUSION ...................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................ 3

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1988) .................................................................................. 2

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................ 3

*Cetacean Cmty. v. Bush*
   386 F.3d 1169 (9th Cir. 2004) ................................................................................ 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*
   65 F. Supp. 3d 840 (N.D. Cal. 2014) ...................................................................... 3

*In re Del Biaggio*
   834 F.3d 1003 (9th Cir. 2016) .............................................................................. 11

*Eminence Capital, LLC v. Aspeon, Inc.*
   316 F.3d 1048 (9th Cir. 2003) ................................................................................ 3

*Florida Power & Light Co. v. Lorion*
   470 U.S. 729 (1985) .............................................................................................. 11

*Leocal v. Ashcroft*
   543 U.S. 1 (2004) .................................................................................................... 8

*Ma v. Ashcroft*
   361 F.3d 553 (9th Cir. 2004) ................................................................................ 11

*Maya v. Centex Corp.*
   658 F.3d 1060 (9th Cir. 2011) ................................................................................ 9

*Naruto v. Slater*
   2016 WL 362231 (N.D. Cal. Jan. 28, 2016) .......................................................... 9

Docketed Cases

*Camp v. Sephora USA, Inc.*
   Case No. 3:24-cv-07330 (N.D. Cal.) ...................................................................... 1

*Campos v. TJX Companies, Inc.*
    Case No. 1:24-cv-11067 (D. Mass.) .................................................................... 1

*Carbajal v. Gap Inc.*
    Case No. 2:24-cv-01056-ROS (D. Ariz.) ............................................................. 1

*Carbajal v. Home Depot U.S.A., Inc.*
    Case No. 2:24-cv-00730-DGC (D. Ariz.) ............................................................ 1

*Carbajal v. Lowe's Home Centers, LLC*
    Case No. 2:24-cv-01030-DLR (D. Ariz.) ............................................................ 1

*d'Hedouville v. H&M Fashion USA, Inc.*
    Case No. C20243386 (Ariz. Super. Ct. Pima Cnty) ....................................... 2, 11

*McGee v. Nordstrom, Inc.*
    Case No. 2:23-cv-01875 (W.D. Wash.) .............................................................. 1

*Mills v. Saks.com LLC*
    Case No. 1:23-cv-10638 (S.D.N.Y.) .................................................................... 1

*Spector v. Williams-Sonoma, Inc.*
    Case No. 4:24-cv-06617-HSG (N.D. Cal.) .......................................................... 1

State Cases

*Maricopa Cnty. v. Barkley*
    168 Ariz. 234, 812 P.2d 1052 (Ariz. Ct. App. 1990) ........................................... 7

*Qasimyar v. Maricopa Cnty.*
    250 Ariz. 580, 483 P.3d 202 (Ariz. Ct. App. 2021) ............................................. 7

*State v. Barnett*
    101 P.3d 646 (Ariz. Ct. App. 2004) ..................................................................... 8

*State v. Chandler*
    244 Ariz. 336 (Ariz. Ct. App. 2017) .................................................................. 11

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rule of Civil Procedure
    Rule 12(b)(6) .................................................................................................. 2, 9

Title 15 United States Code
    § 1681n(a)(1)(B) ............................................................................................... 11

SMRH:4882-9692-7478.10                      PATAGONIA'S MOTION TO DISMISS CLASS ACTION COMPLAINT

Title 18 United States Code
   § 2710 ........................................................................................................... 11

State: Statutes, Rules, Regulations, Constitutional Provisions

Arizona Revised Statutes
   Arizona Eavesdropping and Communications Act
   § 13-3001 *et seq*................................................................................................ 6

   Arizona Telephone, Utility, and Communication Service Records Act
   § 44-1376 *et seq*..................................................................................... *passim*

California Civil Code
   § 1794(c) ...................................................................................................... 11

California Labor Code
   § 226(e) ........................................................................................................ 11

Other Authorities

*Black's Law Dictionary* 1154 (7th ed. 1999) ............................................................ 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case is part of a recent wave of putative class actions brought throughout the country under the Arizona Telephone, Utility, and Communication Service Records Act, Arizona Revised Statutes § 44-1376 *et seq.* (the "Arizona Records Act" or "Act").[1]  The Arizona Records Act was enacted to prevent "pretexting," i.e., the fraudulent impersonation of a customer of a telephone company or public utility or subscriber to a communication service to obtain that customer's or subscriber's information from the company, utility, or service.  These cases now seek to expand this narrow statute to prohibit—and, in fact, *criminalize*—routine commercial behavior of embedding pixels in marketing emails to measure engagement.

Defendant Patagonia, Inc. ("Patagonia") sends marketing emails to customers who sign up to receive them.  Patagonia's emails contain a pixel (small piece of software code) that informs Patagonia how the email recipient engaged with the email—e.g., whether the email was opened, when, and whether the recipient clicked through a link in the email to visit Patagonia's website.  Plaintiff Heather Knight ("Plaintiff") alleges that Patagonia's use of pixels in marketing emails violates the Arizona Records Act.  Until this recent wave of cases, no one had ever asserted that the Act, a statute that was enacted nearly two decades ago, applied to this standard practice of tracking a recipient's engagement with a marketing email.  To date, the one court that has considered "this expansive interpretation of the statute" has rejected it.  Declaration of Patrick D. Rubalcava ("Rubalcava Decl.") ¶ 9, Ex. H

---

[1]  *See*, *e.g.*, *Carbajal v. Home Depot U.S.A., Inc.*, Case No. 2:24-cv-00730-DGC (D. Ariz.); *Carbajal v. Gap Inc.*, Case No. 2:24-cv-01056-ROS (D. Ariz.); *Carbajal v. Lowe's Home Centers, LLC*, Case No. 2:24-cv-01030-DLR (D. Ariz.); *Spector v. Williams-Sonoma, Inc.*, Case No. 4:24-cv-06617-HSG (N.D. Cal.); *Camp v. Sephora USA, Inc.*, Case No. 3:24-cv-07330 (N.D. Cal.); *Campos v. TJX Companies, Inc.*, Case No. 1:24-cv-11067 (D. Mass.); *Mills v. Saks.com LLC*, Case No. 1:23-cv-10638 (S.D.N.Y.); *McGee v. Nordstrom, Inc.*, Case No. 2:23-cv-01875 (W.D. Wash.).

(*d'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386, Order (Ariz. Super. Ct. Pima Cnty. Oct. 11, 2024) ("*d'Hedouville*")) at 4. This Court should do the same and grant Patagonia's Motion to Dismiss ("Motion") the Class Action Complaint ("Complaint").

## II.    RELEVANT ALLEGATIONS

Patagonia—"one of the nation's premier retailers of outdoor recreation clothing"—disseminates marketing emails to drive sales. Dkt. 1-1 (Complaint) ¶ 2. Patagonia allegedly embeds pixels within these emails "to track its recipients' reading habits" and sell and market more products. *Id*. Plaintiff alleges these pixels "capture and log sensitive information" such as when "subscribers open and read their messages" and "how long it takes it takes the subscriber to read the email" without subscribers' consent. *Id*. ¶ 4.

Plaintiff—an Arizona resident—allegedly opened and reviewed promotional emails from Patagonia within the past two years. Dkt. 1-1 (Complaint) ¶ 7. Each time she did so, Patagonia allegedly "procured her sensitive email information including the time and place she opened and read the messages, how long she read the email, her location, her email client type, her IP address, her device information and whether and to whom the email was forwarded to." *Id*. ¶ 8.

Based on these allegations, Plaintiff asserts a single claim for violation of the Arizona Records Act on behalf of herself and putative class of class of "[a]ll persons within Arizona who have opened a marketing email containing a tracking pixel from [Patagonia]." Dkt. 1-1 (Complaint) ¶¶ 44, 52–62.

## III.    LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is a "lack of a cognizable theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint must do more than allege "labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient 'factual matter, accepted as true' to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech, Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (quoting *Iqbal*, 556 U.S. at 678). Dismissal with prejudice is appropriate where, as here, the complaint cannot be saved by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. THE MOTION SHOULD BE GRANTED

The Complaint should be dismissed because it fails to state a cognizable claim under the Arizona Records Act. Specifically, the Complaint fails to state a claim because the Act only applies to information procured from a communication service provider (e.g., AT&T), not information collected by a party to the communication itself. Moreover, the statute does not apply to the email-related information at issue here. Even more, Plaintiff lacks statutory standing because the Complaint does not allege she is a "customer" under the Act that has suffered actual damages.

### A. Dismissal Is Proper Because The Arizona Records Act Does Not Apply To Parties to A Communication

The Arizona Legislature enacted the Arizona Records Act to prevent "pretexting," i.e., impersonating a telephone company customer to obtain that customer's telephone records from the company to then sell on the Internet. Rubalcava Decl. ¶ 3, Ex. B (AZ H.R. S. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006)) (noting "there are over 40 'data broker' companies that…have fraudulently gained access to telephone records by posing as the customer" and "then offer[ed] the records for sale on the Internet without the customer's consent or knowledge, a

practice known as 'pretexting'"). The Arizona Legislature adopted the Act to prohibit this "unauthorized sale of telephone records" and to "[d]irect[] telecommunications carriers maintaining telephone records to establish reasonable procedures to protect the consumer against such unauthorized or fraudulent disclosure." *Id.*, ¶ 2, Ex. A (AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (Feb. 16, 2006)).

In its original form, the Act prohibited a person from: (1) "knowingly procuring, attempting to procure, soliciting or conspiring with another to procure a telephone record … by fraudulent, deceptive or false means"; (2) "knowingly selling or attempting to sell the telephone record … without authorization"; and (3) "receiving a telephone record … knowing that the record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Rubalcava Decl. ¶ 5, Ex. D (2006 Arizona Legis. Serv. Ch. 260 (H.B. 2785)) § 44-1376.01(A)(1)–(3)). The Act defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4). And a "telephone company" was defined as any person providing commercial telephone services to a customer. *Id.* Any person who violated the Act was subject to civil suit and criminal penalties. *Id.* at §§ 44-1376.04, 44.1376.05.

The Arizona Legislature amended the Act in 2007 to "expand" its coverage to "public utility" and "communication service" records. Rubalcava Decl. ¶ 7, Ex. F (AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (Mar. 2, 2007)). As before, the intent was to combat "pretexting," *i.e.*, "the practice of getting personal information under false pretenses." *Id.* ¶ 6, Ex. E (AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (Feb. 19, 2007)); *see also id.* ¶ 8, Ex. G (AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007)). There have been no further amendments of the Act.

As such, the Arizona Records Act, as amended, prohibits a person from: (1) "[k]nowingly procur[ing], attempt[ing] to procure, solicit[ing] or conspir[ing] with

another to procure a public utility record, a telephone record or communication service record of any [Arizona] resident … without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means"; (2) "[k]nowingly sell[ing] or attempt[ing] to sell a public utility record, a telephone record or communication service record of any [Arizona] resident"; and (3) "receiving a public utility record, a telephone record or communication service record of any [Arizona] resident … knowing that the record has been obtained without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." Ariz. Rev. Stat. §§ 44-1376.01(A)(1)-(3). As before, the statute subjects any violator to civil suit and criminal penalties. *Id*. §§ 44-1376.04, 44.1376.05.

When it amended the Act, the Arizona Legislature defined the newly-covered "communication service record[s]" and "public utility record[s]." A.R.S. §§ 44-1376(1), (4). Under the statute, a "communication service record" is:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1). Excluded from this definition is "the content of any stored, oral, wire or electronic communication or a telephone record." *Id.*

The Act's plain language confirms that the term "communication service record" refers to certain information of the "subscriber" to a particular "communication service"—*"subscriber information" only a provider of communication service would have*. For example, only a communication service provider would have records of a communication service subscriber's "billing or installation address" for the communication service, "length of [the communication] service," and "payment method" for the communication service. By way of further

example, only a communication service provider would have records of the "nature of the communication service provided" to the communication service subscriber.

Patagonia—a retailer—is a mere party to emails requested by Plaintiff. It is not a provider of any communication service; as such, information it allegedly collects *about its own emails* cannot be a "communication service record." Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3 (holding that information retailer collects about its own emails cannot be "communication service records"). And there is no allegation that Patagonia procured this email-related information from one of Plaintiff's actual communication service providers (*e.g.*, internet service providers or wireless data carriers). *Id*. (dismissing Arizona Records Act claim because, *inter alia*, plaintiff did not allege retailer "procured his communication service records that were retained by [a] communication service provider"). The statute, therefore, does not and cannot apply to Patagonia's use of pixels in its marketing emails. *Id*.

The Arizona Eavesdropping and Communication Act, codified at Ariz. Rev. Stat. § 13-3001 *et seq*. ("ECA"), another statute governing communication service records, confirms this conclusion. Section 13-3018 of the ECA, which was enacted in 2000, authorizes prosecutors to issue to subpoenas "to all communication service providers that do business in [Arizona] or that furnish communication services to persons within [Arizona]" to obtain "communication service records[.]" Ariz. Rev. Stat. § 13-3018(A)-(B). Its definition of "communication service records" is the same as the Arizona Records Act's definition of "communication service record." *Compare id*. § 13-3018(G) *with id*. § 44-1376(1). And it makes clear that "communication service records" are records held by a "communication service provider." *Id*. § 13-3018.

There is no reason to believe that the Arizona Legislature imported the ECA's definition of "communication service records" into the Arizona Records Act seven years later but intended the term as used in the Arizona Records Act to have a significantly different (and significantly broader) meaning than it does in the ECA.

-6-

Indeed, to adopt the Complaint's definition would be to improperly "interpret the legislature's use of the identical phrase in two statutes relating to the same general subject matter as having two entirely different meanings." *Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 238, 812 P.2d 1052, 1056 (Ariz. Ct. App. 1990); *see also Qasimyar v. Maricopa Cnty.*, 250 Ariz. 580, 587, 483 P.3d 202, 209 (Ariz. Ct. App. 2021) ("a word or phrase used in related statutes should be construed to bear the same meaning throughout"). *d'Hedouville*—the only decision of which Patagonia is aware that has considered a pixel claim under the Arizona Records Act—concluded this would be improper and held that the ECA's "definition of communication service provider…should be read in harmony with the definitions in [the Arizona Records Act] because the statutes are of a related subject and define 'communication service record' with identical descriptions." Rubalcava Decl. ¶ 9, Ex. H at 3.

The interpretation of "communication service record" to mean information maintained a communication service provider is the only one that makes sense in the context of the Act's history and narrow purpose, *i.e.*, to stop "pretexters" from posing as communication service subscribers in order to obtain information about those subscribers from the provider of the communication service. Patagonia is not a "pretexter" using fraudulent means to obtain Plaintiff's subscriber information from the provider of her communication service. It is a party to the communications and is allegedly collecting information about those communications. This conduct bears no resemblance to "pretexting" and, instead, is more like a party to a call keeping a record of whether the call was answered (the opening of the email) and/or whether the other party called them back (clicking on a link in the email). Patagonia, just like anyone sending an email using an email client with a "read receipt" feature (e.g., Microsoft Outlook), is entitled to keep a record of when a recipient opens its emails or when that recipient voluntarily communicates with it via clicking on a link. If the Arizona Legislature intended to regulate such conduct, it could have amended the Act in the near two decades since it was enacted to do so. It has not.

**B. Even If Patagonia Procured The Email-Related Information From A Communication Service Provider, Dismissal Would Still Be Proper Because The Information Is Not A "Communication Service Record"**

Even if the email-related information Patagonia allegedly collects about its own emails were the subject of the Arizona Records Act, the claim would still fail because this information does not fall within the statutory definition of a "communication service record."[2]  Again, the Act defines "communication service record" as:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.

A.R.S. § 44-1376(1).  Notably missing from this definition is the email-related information Patagonia allegedly collects using pixels, *i.e.*, the "time and place subscribers open and read their messages, how long it takes the subscriber to read the email, subscribers' location, subscribers' email client type, subscribers' IP address, subscribers' device information and whether and to whom the email was forwarded to."  Dkt. 1-1 (Complaint) ¶ 4.  That is because the email-related information Patagonia allegedly collects about its own emails does not qualify as a "communication service record" under the Act.  *See* Rubalcava Decl. ¶ 9, Ex. H at (*d'Hedouville*) 3-4 (dismissing TUSCRA claim because, *inter alia*, "the information gleaned from a tracking pixel" does not constitute a "communication service record").

---

[2] Any ambiguities in the Arizona Records Act must be interpreted in Patagonia's favor.  The Act imposes criminal penalties. A.R.S. § 44-1376.05.  When a "penal statute[ is] susceptible to different interpretations," the rule of lenity requires courts to "resolve all doubts in the defendant's favor." *State v. Barnett*, 101 P.3d 646, 649 (Ariz. Ct. App. 2004) (citation omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (When a penal statute has "both criminal and noncriminal applications," "the rule of lenity applies" to both.).

C.  **The Complaint Should Be Dismissed Because Plaintiff Lacks Statutory Standing**

"A plaintiff seeking redress for a statutory violation must establish statutory standing." *Naruto v. Slater*, 2016 WL 362231, at *2 (N.D. Cal. Jan. 28, 2016), *aff'd*, 888 F.3d 318 (9th Cir. 2018) (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004)). Statutory standing exists "when a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." *Cetacean Cmty.*, 386 F.3d at 1175 (internal citations and quotation marks omitted). The legislature must "make its intentions clear before [the courts] will construe a statute to confer standing on a particular plaintiff." *Id.* Whether a plaintiff has stated a basis for statutory standing is tested under Federal Rule of Procedure 12(b)(6). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

1.  *Plaintiff Lacks Statutory Standing Because The Complaint Does Not Allege That Plaintiff Is A "Customer" Under The Act*

Only a "customer whose communication service records, telephone records or public utility records were procured…in violation" of the Arizona Records Act has standing to pursue a civil action. Ariz. Rev. Stat. § 44-1376.04(A). Read logically, this refers to a "customer" of a communication service, telephone company, or public utility whose information was procured from one of these entities without authorization or through fraudulent means. Rubalcava Decl. 9, Ex. H (*d'Hedouville*) at 3 (holding that Section 44-1376.04(A) of the Act "contemplates a customer, or subscriber, of a communication service"); *see also* § 44-1376.01(A)(1) (prohibiting procuring records "without the authorization of the customer to whom the record pertains"). The Complaint does not allege that Plaintiff is a "customer" of any communication service, telephone company, or public utility. And, as set forth above, the Complaint does not allege that Patagonia procured the email-related information it allegedly collected in connection with its own communications from any of those

entities. Plaintiff's Arizona Records Act claim, therefore, fails. Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3.

Even if "customer" were interpreted to mean the "customer" of the person allegedly procuring the records in violation of the Act (which would make no sense), the Complaint would still fail to state a claim because it does not allege—even in conclusory fashion—that Plaintiff is a Patagonia "customer." At best, it alleges Plaintiff received emails from Patagonia. But Patagonia's product is not emails; it is "outdoor recreational clothing." Dkt. 1-1 (Complaint) ¶ 2. And the Complaint does not allege that Plaintiff ever purchased any such clothing from Patagonia. Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville*) at 3 ("Plaintiff has not alleged that he is a customer of H&M because he does not claim that he has purchased any item from H&M. Even if he had, it would not change the outcome because the act contemplates a customer, or subscriber, of a communication service"). As such, Plaintiff lacks standing to pursue a claim under the Act and the Complaint should be dismissed.

### 2. *Plaintiff Lacks Statutory Standing Because The Complaint Does Not Allege Plaintiff Suffered Actual Damages*

Plaintiff also lacks statutory standing under the Arizona Records Act because she does not state a claim involving actual damages.

The Arizona Records Act provides that a "customer" whose records were procured in violation of the statute may bring a civil action to recover "[d]amages equal to the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation but in no case shall a person entitled to recover receive less than one thousand dollars." A.R.S. § 44-1376.04(A)(2). The statutory language does not suggest that the referenced one thousand dollars is a penalty or a liquidated damages amount, as the language is expressly tied to a "customer's" harm. *See id.*; *compare Black's Law Dictionary* 1154 (7th ed. 1999) (defining "statutory penalty" as one "imposed for a statutory violation; esp., a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without

reference to any actual damages suffered").³ To have standing, therefore, a plaintiff must have suffered actual damages.⁴

Even if the statutory language were ambiguous, the legislative history proves that the legislature intended to require actual damages to bring suit. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985); *In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016); *State v. Chandler*, 244 Ariz. 336, 338 (Ariz. Ct. App. 2017). The Arizona State Senate Fact Sheet for House Bill 2875 (which would later become the Arizona Records Act) stated that the purpose of the act was to "[p]rohibit[] the procurement and sale of telephone records through unauthorized, fraudulent or deceptive means." Rubalcava Decl. ¶ 4, Ex. C (AZ S. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Apr. 25, 2006)). As to a potential remedy for a violation, the Senate Fact Sheet also stated the Act would:

> Allow[] a person whose telephone records were procured, sold or received in violation of the telephone record requirements to recover from the person that committed the violation, in a civil action, the following:

---

³ Unlike other statutes, the text does not refer to this $1,000 figure as any type of "penalty," "liquidated damages," or provide $1,000 as an alternative to an actual damages recovery. *See, e.g.*, Cal. Lab. Code § 226(e) (referring to violation as a "penalty"); Cal. Civ. Code § 1794(c) (same); 18 U.S.C. § 2710 ("The court may award … actual damages but not less than *liquidated damages* in an amount of $2,500") (emphasis added); 15 U.S.C. § 1681n(a)(1)(B) (calling for recovery of "actual damages sustained by the consumer as a result [of a violation] *or* $1,000, whichever is greater") (emphasis added).

⁴ This is the only interpretation that makes sense, as a contrary interpretation would mean that a plaintiff who suffered no actual damages would have a claim that is not cognizable in Arizona courts (*see* Rubalcava Decl. ¶ 9, Ex. H (*d'Hedouville* at 5)) but that was permissible elsewhere. Allowing that plaintiff to bring her claims elsewhere would be to permit the plaintiff to pursue a claim in any court ***except for*** Arizona courts. The Arizona Legislature did not intend to pass a statute wherein a subset of claims could only be pursued outside of the State; the Act was enacted with the express purpose of protecting Arizona residents. *See Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) (courts should avoid interpretations that "would produce absurd results") (citation omitted).

> …
>
> b) damages equal to the sum of the actual damages suffered by the person and any profits made by the violator as a result of the violation. **Damages must be at least $1,000**.

*Id.* at 2 (emphasis added). The legislative history makes clear, therefore, that the Act was intended to provide a civil remedy to only individuals who have suffered damages.

Plaintiff's claim arises out of Patagonia's alleged use of pixels that identify when emails were opened and read. Yet, the Complaint is devoid of any allegation that Plaintiff has suffered actual damages. *See generally* Dkt. 1-1 (Complaint). At most, the Complaint concludes that Patagonia "invaded" Plaintiff's "right to privacy by its invasive surveillance of [her] sensitive reading habits," which allegedly "also intruded upon [her] seclusion." Dkt. 1-1 (Complaint) ¶ 54. But the Complaint does not allege that Plaintiff suffered any actual damages as a result of the alleged invasion of privacy. As such, Plaintiff does not have statutory standing to pursue a civil claim under the Arizona Records Act.

## V. CONCLUSION

For the foregoing reasons, Patagonia respectfully requests the Court grant its Motion and dismiss the Complaint with prejudice.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: November 26, 2024   By   */s/ P. Craig Cardon*
P. CRAIG CARDON
BENJAMIN O. AIGBOBOH
PATRICK D. RUBALCAVA

*Attorneys for Defendant*
PATAGONIA, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Patagonia, Inc., certifies that this brief contains <u>3984</u> words, which:

<u> x </u>   complies with the word limit of L.R. 11-6.1.

<u>   </u>   complies with the word limit by court order dated <u>        </u>.

Dated: November 26, 2024                     */s/ P. Craig Cardon*
                                             P. CRAIG CARDON
                                             BENJAMIN O. AIGBOBOH
                                             PATRICK D. RUBALCAVA

SMRH:4882-9692-7478.4

---

SMRH:4882-9692-7478.10

-1-

PATAGONIA'S MOTION TO DISMISS CLASS ACTION COMPLAINT